UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| In re: | Chapter 11 |
| DRUG TRANSPORT, INC., et al., | Jointly Administered Under Case No. 14-62621 |
| Debtors. | |

STATE OF GEORGIA

COUNTY OF FULTON

## AFFIDAVIT OF BAYARD B. HOLLINGSWORTH IN SUPPORT OF FIRST DAY MOTIONS

Bayard B. Hollingsworth, being first duly sworn, deposes and says:

1.    I am the Managing Director of Triton Capital Partners, Ltd. (Southeast Region).  I am the Chief Restructuring Officer of Drug Transport, Inc., DTI Logistics, Inc., and DB&D Investments, LLC, debtors and debtors-in-possession in the above-styled Chapter 11 cases (collectively, the Debtors) by virtue of an engagement agreement executed by Debtors and by Triton Capital Partners, Ltd.  In this capacity, I have knowledge of the corporate structure, business operations, lending relationships, and financial condition of the Debtors.

2.    The company now called Drug Transport Inc. ("DTI") was formed in 1981.  In 1982 DTI purchased the Drug Transport business, which had, since 1959,

441218

delivered critical shipments to hospitals, nursing homes, and clinics in the South. After the purchase DTI expanded and grew the business. DTI branched out beyond service to the healthcare industry and now provides transportation and logistics services to a wide and diverse range of industries throughout the United States. As part of DTI's growth, DTI formed DTI Logistics, its truckload services subsidiary, in 1984. At its peak, DTI and DTI Logistics had over $50 million in aggregate sales.

3.    DTI is 82.5% owned by R.S. Lockwood, Sr. and 17.5% owned by his daughter, Patricia Tafel.

4.    DTI offers dedicated brokerage and truckload transportation service. The dedicated division provides a fleet and drivers to specific customers. The brokerage division brokers freight transport through a nationwide network of carriers. DTI Logistics handles only full truckloads. DTI was also operating in the "less than truckload" segment of the industry until recently when it sold this operation to Central Freight Lines, Inc. based in Waco, TX.  DB&D owns the real estate – i.e. the terminals where DTI and DTI Logistics base their operations, located in Tucker, Georgia (two facilities on separate parcels) (the "Tucker Terminal"), and in Douglas, Georgia.  DB&D also owns a vacant terminal in Birmingham, Alabama.  In addition

2

441218

to those owned by DB&D, DTI leases terminal facilities in Augusta, Georgia and Greenville, Alabama.

5.     The brokerage division is affiliated with brokers who make arrangements with shippers to have cargo loads transported by licensed motor carriers. DTI acts as intermediary for collection of freight charges from shippers and transmission of payments to the motor carriers. DTI maintains separate accounts for brokerage activities.  Of the Debtors' total receivables as of the Petition Date of approximately $2,759,170, $1,461,133.57 were attributable to DTI's brokerage division as of August 7, 2014.  Of the Debtor's total unsecured claims as of the Petition Date of $4.8 million, including approximately $524,000 owed to Patricia Tafel, the payables due carriers total $2,778,305.42 as of August 7, 2014.

6.     DB&D, LLC's sole member is R.S. Lockwood, Sr.  DTI Logistics is 100% owned by DTI.

7.     RSL Leasing, LLC ("RSL"), a non-debtor company affiliated with the Debtors, leases tractors and trailers to DTI and DTI Logistics, as set forth in more detail below. RSL is 50% owned by R.S. Lockwood, Sr. and 50% owned by his son, R.S. Lockwood, Jr.

3

441218

8.      DTI Logistics leases twelve tractors from Advantage Truck Leasing ("Advantage"), nineteen trucks from Ryder Truck Rental, Inc. d/b/a Ryder Transportation Services ("Ryder"), three trucks on a short term basis from Ryder, and four tractors from RSL.  In addition, DTI Logistics has agreements with two owner operators.

9.      DTI leases seventeen trucks from Ryder in connection with DTI's Richmond operations.  Also, DTI leases from RSL: three sixteen-foot trucks, twenty-nine straight (box) trucks, twenty-two tractors, and two hundred twelve (212) fifty-three foot trailers.

10.     The Debtors' lease with RSL provides for monthly payments of $135,000.  For some time, Debtors have made monthly payments in amounts substantially less than $135,000, the majority of which were essentially passed through to RSL's secured creditors, Peoples Bank and United Community Bank ("UCB").[1]  RSL is current with UCB and with Peoples Bank. Debtors' proposed cash collateral order provides authority for Debtors to continue to make payments to RSL in such amounts as are necessary to keep RSL's obligations to UCB and Peoples Bank current, and specifically prohibits any other payments to RSL.

---

[1] At such time as Debtors file their schedules as required by Rule 1007 Debtors will identify all payments made to RSL within the year prior to the Petition Date and the amounts indirectly received by insiders from RSL.

4

11. Debtors' primary secured creditor, Branch Banking and Trust Company ("BB&T") has filed a complaint against the Debtors on August 1, 2014 in the United States District Court for the Northern District of Georgia, seeking the appointment of a receiver and recovery of the principal amount of $7,053,443.31, plus pre-judgment interest, post-judgment interest, attorneys' fees and other damages.

12. On August 5, 2014, Debtors and BB&T presented a consent order (the "Receivership Order") to United States District Judge Clarence Cooper. The Receivership Order provided that the Debtors would be enjoined from making any payments without BB&T's consent except for certain scheduled payments and payments authorized under a budget attached to the Receivership Order. The Receivership Order further provided that no receiver would be appointed prior to August 12, 2014, on which date an order appointing a receiver could be entered without further notice or hearing. The Receivership Order was entered on August 8, 2014.

13. Prior to the filing of the petitions, on August 8, 2014, Debtors sold the LTL division of DTI's business to Central Freight Lines, Inc., a Texas corporation ("Central"). The assets sold consisted of the customer list of the Debtors' LTL division. The purchase consideration consisted of (i) a 2% Revenue Earn-Out for 36

5

months (payable quarterly on revenue booked and received by Central, less fuel surcharge); (ii) an Employee Earn-Out of $500 per employee for each year that a former employee of Debtors continues to be employed by Central; and (iii) four year term leases for DB&D's terminals in Tucker and Douglas, Georgia with an aggregate rental amount of $14,000 per month. At closing, Central made a $350,000 non-refundable advance payment against the earn-outs, which payment, pursuant to the Receivership Order, was remitted to BB&T, and Central executed leases for the Tucker and Douglas terminals. Absent immediate sale the Debtors would have had no choice but to immediately terminate all LTL employees and would have received no benefit from the goodwill of the business.

14. Due to the Debtors' financial condition, carriers are no longer able to factor DTI's receivables. This has essentially shut down DTI's brokerage division, leaving DTI's brokerage division with approximately 64 loads in transit with outside carriers as of August 8, 2014. Debtors will reorganize around DTI's dedicated division and DTI Logistics' truckload division, which have historically been profitable.

15. Prior to the Petition Date, Debtor retained Triton Capital Partners, Ltd. as a financial advisor2.

---

[2] Prior to May 18, 2014, Triton served as a consultant rather than a financial advisor.

6

441218

16.    On August 4, 2014, Debtors executed an engagement agreement for Triton to provide the services of Triton's Managing Director, Bayard B. Hollingsworth, as Chief Restructuring Officer for the Debtors with financial control of the Debtors' cash, and with authority to collect all receivables of the Debtors and to pay such sums to employees, suppliers and creditors as he deems necessary to maintain the Debtors' business operations and assets.  Mr. Hollingsworth will act as the responsible person for the debtors-in-possession in these cases.

17.    I have read and am familiar with the First Day Motions filed in this case. For the reasons stated in the Motions, the relief sought in the motions is important for the Debtors to successfully reorganize, and the relief is needed on an expedited basis.

FURTHER AFFIANT SAYETH NAUGHT.



Bayard B. Hollingsworth

SWORN TO and subscribed before me
this ___ day of _August_ , 2014.

NOTARY PUBLIC

LINDA W. MCLANE
Notary Public, Georgia
Cobb County
My Commission Expires
January 03, 2018

7

441218

CERTIFICATE OF SERVICE

This is to certify that I have this day served a true and correct copy of the foregoing

document upon all those parties listed below via electronic transmission addressed to:

> Office of U.S. Trustee
> 365 Richard Russell Bldg.
> 75 Spring Street, S.W.
> Atlanta, GA  30303
> guy.gebhardt@usdoj.gov
> ustp.regon21@usdoj.gov
>
> James S. Rankin, Jr.
> Joshua J. Lewis
> Parker, Hudson, Rainer & Dobbs, LLP
> 1500 Marquis Two Tower
> 285 Peachtree Center Avenue
> Atlanta, GA  30303
> jsr@phrd.com
> jjl@phrd.com

This 11th day of August, 2014.

/s/ Gregory D. Ellis
Gregory D. Ellis
Georgia Bar No. 245310

441218