**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | | |
|---|---|---|
| | ) | |
| In re: | ) | Chapter 11 |
| | ) | |
| DRUG TRANSPORT, INC., et al., | ) | Jointly Administered Under |
| | ) | Case No. 14-65621 |
| Debtors. | ) | |
| ———————————————— | ) | |
| | ) | |
| BRANCH BANKING AND TRUST | ) | |
| COMPANY, | ) | |
| | ) | CONTESTED MATTER |
| Movant, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| DRUG TRANSPORT, INC., et al., | ) | |
| | ) | |
| Respondents. | ) | |
| ———————————————— | ) | |

## <u>NOTICE OF HEARING</u>

PLEASE TAKE NOTICE that Branch Banking and Trust Company ("**Movant**") filed a *Motion of Branch Banking and Trust Company for Relief from the Automatic Stay* and related papers with the Court seeking an order granting Movant stay relief to exercise its state law and contractual rights and remedies as a secured creditor with respect to substantially all of the assets of Debtors Drug Transport, Inc., DB&D Investments, LLC, and DTI Logistics, Inc.

PLEASE TAKE FURTHER NOTICE that the Court will hold a hearing on the Motion in Courtroom **1402**, United States Courthouse, 75 Spring Street, S.W., Atlanta, Georgia, at **11:00 p.m. on September 22, 2014**.

Your rights may be affected by the court's ruling on these pleadings. You should read these pleadings carefully and discuss them with your attorney, if you have one in this bankruptcy case. (If you do not have an attorney, you may wish to consult one.)  If you do not want the court to grant the relief sought in these pleadings or if you want the court to consider your views, then you and/or your attorney must attend the hearing.  You may also file a written response to the pleading with the Clerk

3411775_2

at the address stated below, but you are not required to do so.  If you file a written response, you must attach a certificate stating when, how and on whom (including addresses) you served the response.  Mail or deliver your response so that it is received by the Clerk at least two business days before the hearing.  The address of the Clerk's Office is: Clerk, U. S. Bankruptcy Court, Suite 1340, 75 Spring Street, Atlanta Georgia 30303. You must also mail a copy of your response to the undersigned at the address stated below.

If a hearing on the motion for relief from the automatic stay cannot be held within thirty (30) days, Movant waives the requirement for holding a preliminary hearing within thirty days of filing the motion and agrees to a hearing on the earliest possible date. If a final decision cannot be rendered by the Court within sixty (60) days of the date of the request, Movant waives the requirement that a final decision be issued within that period. Movant consents to the automatic stay remaining in effect until the Court orders otherwise.

**PARKER, HUDSON, RAINER & DOBBS LLP**
Counsel for Branch Banking and Trust Company

By:*/s/ James S. Rankin, Jr.*
    James S. Rankin, Jr.
    Georgia Bar No. 594620
    Joshua J. Lewis
    Georgia Bar No. 303211

1500 Marquis Two Tower
285 Peachtree Center Avenue, N.E.
Atlanta, Georgia  30303
(404) 523-5300
jrankin@phrd.com
jlewis@phrd.com

- 2 -

3411775_2

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| DRUG TRANSPORT, INC., et al., | ) | Jointly Administered Under |
| | ) | Case No. 14-65621 |
|     Debtors. | ) | |
| _____ | ) | |
| | ) | |
| BRANCH BANKING AND TRUST | ) | |
| COMPANY, | ) | |
| | ) | CONTESTED MATTER |
|     Movant, | ) | |
| | ) | |
|     v. | ) | |
| | ) | |
| DRUG TRANSPORT, INC., et al., | ) | |
| | ) | |
|     Respondents. | ) | |
| _____ | ) | |

**MOTION OF BRANCH BANKING AND TRUST COMPANY**
**FOR RELIEF FROM THE AUTOMATIC STAY**

Branch Banking and Trust Company ("**Lender**") moves the Court to grant it relief from the automatic stay imposed by section 362 of the Bankruptcy Code with respect to substantially all of the real and personal property assets of Debtors Drug Transport, Inc. ("**Drug Transport**"), DB&D Investments, LLC ("**DB&D**") and DTI Logistics, Inc. ("**DTI**"; together with Drug Transport and DB&D, "**Debtors**").  In support of its Motion, Lender respectfully shows the Court as follows:

## Introduction and Summary of Argument

Prior to August 11, 2014 (the "**Petition Date**"), Lender entered into a revolver loan facility with Drug Transport; made multiple term loans to DB&D; made a term loan to Debtors, jointly and severally; and provided corporate credit cards for the benefit of one or more Debtors. Debtors are jointly and severally liable for all of the obligations of each Debtor to Lender pursuant to certain promissory notes, guaranty agreements, and related documents. As of the Petition Date, the aggregate principal balance of the obligations of Debtors to Lender equaled approximately $6,716,519.92. The loans to Debtors are secured by substantially all of Debtors' assets (collectively, the "**Collateral**").

Relief from the stay is warranted in these jointly administered cases because (a) as is set forth in Lender's *Objection of Branch Banking and Trust Company to Debtors' Motion for Order Authorizing Use of Cash Collateral* filed on or about the date hereof, Lender's interests in the Collateral are not adequately protected, and (b) Debtors do not have any equity in the Collateral, and such Collateral is not necessary for an effective reorganization in light of the fact that an effective reorganization is not realistically achievable within a reasonable period of time.

## Parties, Jurisdiction and Venue

1.      On the Petition Date, Debtors filed with this Court their petitions for relief under Chapter 11 of the Bankruptcy Code.

2.      Pursuant to orders entered in their respective bankruptcy cases on August 12, 2014, the bankruptcy cases of Debtors are being jointly administered (the jointly administered cases are hereinafter referred to collectively as the "**Bankruptcy Case**").

3.      This Motion is a contested matter pursuant to Bankruptcy Rule 9014 and is filed by Lender pursuant to 11 U.S.C. § 362 to obtain relief from the automatic stay.

4.      The Court has jurisdiction over this matter and over Debtors pursuant to 28 U.S.C. §§ 157 and 1334.

5.      Venue over this matter is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

6.      This Motion constitutes a core proceeding which may be heard and determined by the Court pursuant to 28 U.S.C. §§ 157(b)(1) and 157(b)(2)(A)&(G).

**Factual Background[1]**

A.      **Note 1**

7.      On or about July 22, 2005, DB&D made a BB&T Promissory Note payable to Lender in the original principal amount of $810,000 (as any time amended, modified, renewed or restated, "**Note 1**").

8.      As of the Petition Date, the approximate principal amount of indebtedness owed under Note 1, exclusive of accrued interest, fees, costs, expenses, attorneys' fees and other charges, equaled $566,285.38.

9.      Note 1 was initially secured primarily by certain real property and improvements located at 2600 Republic Boulevard, Birmingham, Jefferson County, Alabama (the "**Alabama Real Estate**"), pursuant to a Mortgage of Real Estate and Security Agreement executed by DB&D in favor of Lender dated July 22, 2005, recorded on March 31, 2006, at Deed Book LR200606, Page 4144 (as

---

1      Copies of the material loan documents referenced in this Motion have been provided to counsel for Debtors and are or will be attached to Proofs of Claims that have been or soon will be filed by Lender.

at any time amended or modified, the "**Note 1 Security Deed**"), in the real estate records of Jefferson

County, Alabama (the "**Jefferson County Records**").

      **B.**    <u>**Note 2**</u>

      10.    On or about July 22, 2005, DB&D made a BB&T Promissory Note payable to Lender

in the original principal amount of $320,000 (as any time amended, modified, renewed or restated,

"**Note 2**").

      11.    As of the Petition Date, the approximate principal amount of indebtedness owed

under Note 2, exclusive of accrued interest, fees, costs, expenses, attorneys' fees and other charges,

equaled $223,719.63.

      12.    Note 2 was initially secured primarily by (a) the Alabama Real Estate pursuant to a

Mortgage of Real Estate and Security Agreement executed by DB&D in favor of Lender dated July

22, 2005, recorded on March 31, 2006, at Deed Book LR200606, Page 4156, Jefferson County

Records (as at any time amended or modified, the "**Note 2 Security Deed**"), and (b) certain real

property and improvements located at 4732 Stone Drive, Tucker, DeKalb County, Georgia (the

"**Stone Drive Real Estate**"), pursuant to a Deed to Secure Debt, Assignment of Rents and Security

Agreement executed by DB&D in favor of Lender dated June 28, 2006 (as at any time amended or

modified, the "**Note 11 Security Deed**"), recorded on July 14, 2006, at Deed Book 18926, Page 370,

in the real estate records of DeKalb County, Georgia (the "**DeKalb County Records**").

      **C.**    <u>**Note 9**</u>

      13.    On or about June 28, 2006, DB&D made a BB&T Promissory Note payable to Lender

in the original principal amount of $1,252,000 (as any time amended, modified, renewed or restated,

"**Note 9**").

14.    Note 9 was modified pursuant to a BB&T Note Modification Agreement dated June 21, 2013, reflecting, among other things, that the modified principal amount of Note 9 was $1,027,991.97 as of June 21, 2013.

15.    As of the Petition Date, the approximate principal amount of indebtedness owed under Note 9, exclusive of accrued interest, fees, costs, expenses, attorneys' fees and other charges, equaled $942,326.00.

16.    Note 9 was initially secured primarily by the Stone Drive Real Estate and certain real property and improvements located at 1939 Forge Street, Tucker, DeKalb County, Georgia (the "**Forge Street Real Estate**"), in each case pursuant to a Georgia Security Deed and Security Agreement executed by DB&D in favor of Lender dated June 28, 2006, recorded on July 12, 2006, at Deed Book 18918, Page 779, DeKalb County Records (as at any time amended or modified, the "**Note 9 Security Deed**").

**D.    Note 10**

17.    On or about June 28, 2006, DB&D made a BB&T Promissory Note payable to Lender in the original principal amount of $148,000 (as any time amended, modified, renewed or restated, "**Note 10**").

18.    Note 10 was modified pursuant to a BB&T Note Modification Agreement dated June 21, 2013, reflecting, among other things, that the modified principal amount of Note 10 was $121,518.80 as of June 21, 2013.

19.    As of the Petition Date, the approximate principal amount of indebtedness owed

under Note 10, exclusive of accrued interest, fees, costs, expenses, attorneys' fees and other charges, equaled $111,392.19.

20.     Note 10 was initially secured primarily by certain real property and improvements located at 1519 Perrin Drive, Douglas, Coffee County, Georgia (the "**Coffee County Real Estate**"), pursuant to a Georgia Security Deed and Security Agreement executed by DB&D in favor of Lender dated June 28, 2006 (as at any time amended or modified, the "**Note 10 Security Deed**"; together with the Note 1 Security Deed, Note 2 Security Deed, Note 9 Security Deed and Note 11 Security Deed, the "**Security Deeds**"), recorded on July 13, 2006, at Deed Book 1271, Page 25, in the real estate records of Coffee County, Georgia (the "**Coffee County Records**").

### E.    Note 11

21.     On or about June 28, 2006, DB&D made an Amended and Restated Commercial Promissory Note payable to Lender in the original principal amount of $900,000 (as any time amended, modified, renewed or restated, "**Note 11**").

22.     Note 11 was modified pursuant to BB&T Note Modification Agreements dated June 12, 2007, June 24, 2009, and July 17, 2012.  The BB&T Note Modification Agreement relating to Note 11 dated July 17, 2012, reflects, among other things, that the modified principal amount of Note 11 was $826,067.58 as of July 17, 2012, and Note 11 matured by its terms on June 22, 2014.

23.     As of the Petition Date, the approximate principal amount of indebtedness owed under Note 11, exclusive of accrued interest, fees, costs, expenses, attorneys' fees and other charges, equaled $766,681.33.

24.     Note 11 was initially primarily secured by the Stone Drive Real Estate pursuant to the

- 6 -

Note 11 Security Deed.

**F.**     **The Loan Agreements**

25.     Drug Transport and DB&D are parties with Lender to a BB&T Loan Agreement dated July 28, 2006 (as at any time amended or modified, the "**First Loan Agreement**"), relating to Note 1, Note 2, Note 9, Note 10 and Note 11, as amended by an Amendment of Loan Agreement dated June 21, 2013.

**G.**     **Note 17**

26.     On or about October 20, 2011, Drug Transport made a BB&T Promissory Note payable to Lender in the original principal amount of $4,200,000 (as any time amended, modified, renewed or restated, "**Note 17**").

27.     Note 17 was modified pursuant to a Note Modification Agreement dated October 21, 2013, reflecting, among other things, that Note 17 matured by its terms on May 22, 2014.

28.     As of the Petition Date, the approximate principal amount of indebtedness owed under Note 17, exclusive of accrued interest, fees, costs, expenses, attorneys' fees and other charges, equaled $3,643,745.17.

29.     Note 17 was initially primarily secured by all or substantially all of Drug Transport's personal property assets (collectively, the "**Drug Transport Personal Property**"), including, without limitation, equipment, accounts, general intangibles, supporting obligations, and the proceeds thereof, pursuant to BB&T Security Agreements executed by Drug Transport in favor of Lender dated June 28, 2006 and October 20, 2011, respectively (collectively, the "**Drug Transport Security Agreements**").

- 7 -

30.    In connection with Note 17, Drug Transport and Lender also are parties to a BB&T Loan Agreement dated October 20, 2011 (as at any time amended or modified, the "**Second Loan Agreement**").

31.    Lender perfected its security interests in the Drug Transport Personal Property by recording in Georgia that certain UCC-1 Financing Statement No. 033-2006-05663 on August 9, 2006 (the "**2006 Financing Statement**"), as continued by UCC-1 Financing Statement Amendment No. 033-2011-03931 (the "**Continuation Statement**"), and that certain UCC-1 Financing Statement No. 044-2012-002324 on July 18, 2012 (the "**2012 Financing Statement**").

      **H.**    <u>**Note 18**</u>

32.    On or about July 18, 2012, Drug Transport, DB&D, and DTI, jointly and severally, made a BB&T Promissory Note payable to Lender dated July 18, 2012, in the original principal amount of $719,882.14 (as any time amended, modified, renewed or restated, "**Note 18**"; together with Note 1, Note 2, Note 9, Note 10, Note 11 and Note 17, collectively, the "**Notes**").

33.    As of the Petition Date, the approximate principal amount of indebtedness owed under Note 18, exclusive of accrued interest, fees, costs, expenses, attorneys' fees and other charges, equaled $415,293.61.

      **I.**    <u>**Cross Default Agreement**</u>

34.    On or about July 18, 2012, Debtors and Lender executed a Cross-Default and Cross-Collateral Agreement (the "**Cross Default Agreement**") pursuant to which all obligations and liabilities of Debtors to Lender, including, without limitation, the obligations and liabilities under the Notes, Security Deeds, Security Agreements, First Loan Agreement and Second Loan Agreement

- 8 -

(collectively, the "**Obligations**") are cross-collateralized and cross-defaulted. The Cross Default Agreement was recorded on (a) August 13, 2012, at Deed Book 1630, Page 45, in the Coffee County Records; (b) on August 15, 2012, at Deed Book LR 201216, Page 12118, in the Jefferson County Records; and (c) on October 10, 2012, at Deed Book 23315, Page 163, in the DeKalb County Records.

35.     In connection with Note 18 and the Cross Default Agreement, DTI executed a BB&T Security Agreement in favor of Lender dated July 18, 2012 (the "**DTI Security Agreemen**t"), pursuant to which DTI pledged all or substantially all of its personal property assets (collectively, the "**DTI Personal Property**"), including, without limitation, accounts, general intangibles, supporting obligations, and the proceeds thereof, as security for the Obligations.

36.     Lender perfected its security interests in the DTI Personal Property by recording the 2012 Financing Statement.

37.     Pursuant to the Security Deeds, Security Instruments (as defined in the Cross Default Agreement) and all related documents, instruments, and agreements, including any amendments or modifications to any of the foregoing (collectively, the "**Loan Documents**"), Lender has a perfected security interest in all or substantially all of the assets of each Debtor.

**J.     The Guaranties**

38.     To induce Lender to make loans to Drug Transport, DB&D executed in favor of Lender a BB&T Guaranty Agreement dated October 21, 2013 (the "**DB&D Guaranty**"), pursuant to which DB&D guaranteed the full and timely payment and performance of all Obligations owed by Drug Transport to Lender; Drug Transport executed in favor of Lender a BB&T Guaranty Agreement

- 9 -

dated June 21, 2013 (the "**Drug Transport Guaranty**"), pursuant to which Drug Transport guaranteed the full and timely payment and performance of all obligations owed by DB&D to Lender; and DTI executed in favor of Lender a BB&T Guaranty Agreement dated June 21, 2013 (the "**DTI Guaranty**"), pursuant to which DTI guaranteed the full and timely payment and performance of all obligations owed by DB&D to Lender.

39.     Pursuant to the DB&D Guaranty, Drug Transport Guaranty, DTI Guaranty, and any other guarantees executed by any of them in favor of Lender (collectively, the "**Guaranties**"), or the Notes, each Debtor is directly or indirectly liable for the payment and performance of all of the Obligations.

### K.      Credit Card Accounts

40.     Prior to the Petition Date, Lender also provided corporate credit cards for the benefit of one or more Debtors.  As of the Petition Date, the principal balance owed with respect to the credit card accounts equaled approximately $47,076.61.

### L.      Defaults and Maturity of Obligations

41.     As of May 1, 2014, Events of Default had occurred under (and as defined in) the Second Loan Agreement as a result of Drug Transport's breach of Section 8.05 of the Second Loan Agreement by virtue of its failure to deliver to Lender on or before April 30, 2014, reviewed annual financial statements of Drug Transport for Drug Transport's fiscal year ended December 31, 2013. By letter dated May 13, 2014 (the "**First Default Letter**"), Lender notified Debtors of the occurrence of the aforementioned Event of Default and Lender reserved all of the rights and remedies available to it under the Loan Documents and applicable law as a result of the Event of Default.

- 10 -

42.     As of May 23, 2014, additional Events of Default had occurred under the Loan Documents by virtue of Drug Transport's failure to pay the indebtedness evidenced by Note 17 at maturity on May 22, 2014, and Drug Transport's violation of borrowing formulas set forth in Section 10.01 of, and Schedule DD to, the Second Loan Agreement.  By letter dated May 23, 2014 (the **"Second Default Letter"**), Lender notified Debtors of the occurrence of the additional Events of Default and Lender reserved all of the rights and remedies accruing to it under the Loan Documents and applicable law as a result of the occurrence of the Events of Default.

43.     As of June 23, 2014, additional Events of Default had occurred under the Loan Documents by virtue of DB&D's failure to pay the indebtedness evidenced by Note 11 at maturity on June 22, 2014.

44.     On July 31, 2014, Lender provided Debtors with written notice of the continuing existence of Events of Default under the Loan Documents and accelerated the maturity of all of the Obligations.

45.     On August 1, 2014, Lender filed a complaint against Debtors initiating the matter styled *Branch Banking and Trust Company v. DB&D Investments, LLC, et al.*, Civil Action File No. 1:14-cv-2498-CC, United States District Court for the Northern District of Georgia (Atlanta Division), which precipitated this Chapter 11 Case.

46.     As is set forth in Lender's *Objection of Branch Banking and Trust Company to Debtors' Motion for Order Authorizing Use of Cash Collateral*, which is incorporated herein by reference, Lender's interests in the Collateral are not adequately protected.

47.     Debtors have no equity in the Collateral.

- 11 -

48.     The Collateral is not necessary for an effective reorganization in the Bankruptcy Case because a reorganization is not realistically achievable within a reasonable period of time.

### Relief Requested

49.     Lender requests relief from the automatic stay, pursuant to 11 U.S.C. § 362(d), (i) for "cause," including lack of adequate protection, and (ii) because Debtors do not have any equity in the Collateral and the Collateral is not necessary to an effective reorganization.

50.     Section 362(d) of the Bankruptcy Code provides in pertinent part as follows:

(d)     On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection  (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay:

(1)     for cause, including the lack of adequate protection of an interest in property of such party in interest; or

(2)     with respect to a stay of an act against property under subsection (a) of this section, if:

(A) the debtor does not have an equity in such property; and
(B) such property is not necessary to an effective reorganization. . . .

51.     Section 362(d) is written in the disjunctive and authorizes relief from the stay if a party with an interest in property of the estate can demonstrate cause, including lack of adequate protection, or establish that the debtor has no equity in the property and that the property is not necessary to an effective reorganization.  Nazareth National Bank v. Tina-Dee, Inc., 731 F.2d 170, 171 (3d Cir. 1984); Albany Partners, Ltd. v. Westbrook, 749 F.2d 670, 673 (11th Cir. 1984) (considering "lack of equity" and "lack of adequate protection or cause" as separate grounds for relief).

52.     "Cause" must be determined on a case-by-case basis.  In re Murray Industries, Inc., 121 B.R. 635 (Bankr. M.D. Fla. 1990).

- 12 -

53.    In this instance, the net liquidation value of the Collateral is less than the indebtedness the Collateral secures; as is set forth more fully in Lender's objection to Debtors' use of cash collateral, Debtors are incapable of providing protection to Lender to adequately protect Lender's interests in the Collateral; and Debtors have no prospect of reorganizing.

54.    Debtors have the burden to establish that the Collateral is necessary for an effective reorganization.  11 U.S.C. § 362(d)(2)(B) & (g).  "What this requires is not merely a showing that if there is conceivably to be an effective reorganization, this property will be needed for it; but that the property is essential for an effective reorganization that is in prospect. This means, as many lower courts . . . have properly said, that there must be 'a reasonable possibility of a successful reorganization within a reasonable time.' " U.S. Sav. Ass'n. of Texas v. Timbers of Inwood Forest Assocs., Ltd., 484 U.S. 365, 375-76, 108 S. Ct. 626, 98 L. Ed. 2d 740 (1988).

55.    For the foregoing reasons, this Court should grant relief from the automatic stay imposed by section 362(a) of the Bankruptcy Code to permit Lender to exercise any or all of its state law and contractual rights and remedies with respect to the Collateral.

56.    Finally, Lender also requests that the Court waive the 10-day stay of any order granting this Motion pursuant to Rule 4001(a) of the Federal Rules of Bankruptcy Procedure.

WHEREFORE, Lender respectfully requests that the Court enter an order (i) terminating the automatic stay imposed by section 362 of the Bankruptcy Code with respect to Lender's interests in the Collateral and permitting Lender to exercise any and all of its state law and contractual rights and remedies with respect to the Collateral, (ii) waiving the 10-day stay of any order granting this Motion pursuant to Rule 4001(a) of the Federal Rules of Bankruptcy Procedure, and (iii) granting to Lender

- 13 -

such other and further relief as may be necessary or appropriate under the circumstances.

Respectfully submitted, this 21st day of August, 2012.


**PARKER, HUDSON, RAINER & DOBBS LLP**
Counsel for Branch Banking and Trust Company

By:*/s/ James S. Rankin, Jr.*
    James S. Rankin, Jr.
    Georgia Bar No. 594620
    Joshua J. Lewis
    Georgia Bar No. 303211

1500 Marquis Two Tower
285 Peachtree Center Avenue, N.E.
Atlanta, Georgia  30303
(404) 523-5300
jrankin@phrd.com
jlewis@phrd.com

## CERTIFICATE OF SERVICE

I hereby certify that on August 21, 2014, a true and correct copy of the foregoing *Notice of Hearing* and *Motion of Branch Banking and Trust Company for Relief From the Automatic Stay* were served through the Court's ECF system upon ECF filers registered in this case, and by first class U.S. mail, postage prepaid, addressed as follows:

James C. Cifelli, Esq.
Gregory D. Ellis, Esq.
Lamberth, Cifelli, Stokes, Ellis & Nason
East Tower, Suite 550
3343 Peachtree Road, NE
Atlanta, GA 30326-1022

David S. Weidenbaum, Esq.
Office of the U.S. Trustee
362 Richard B. Russell Bldg.
75 Spring Street, SW
Atlanta, GA 30303

L. Lou Allen, Esq.
Stites & Harbison, PLLC
2800 SunTrust Plaza
303 Peachtree Street, NE
Atlanta, GA 30308

Joseph J. Burton, Jr., Esq.
Mozley, Finlayson & Loggins, LLP
One Premier Plaza - Suite 900
5605 Glenridge Drive
Atlanta, GA 30342

Roy E. Manoll, III, Esq.
Fortson, Bentley & Griffin, P.A.
Building 200 - Suite 3A
2500 Daniell's Bridge Rd.
Athens, GA 30606

By: */s/ Joshua J. Lewis*
        Joshua J. Lewis
        Georgia Bar No. 303211

- 15 -